**SO ORDERED,**



**Judge Jason D. Woodard**

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| STEVEN KEITH JENKINS, | ) | Case No. 19-13234-JDW |
| | ) | |
| Debtor. | ) | Chapter 7 |

### ORDER GRANTING MOTION TO SELL ASSET FREE AND CLEAR OF LIENS, INTEREST, ENCUMBRANCES AND CLAIMS PURSUANT TO 11 U.S.C. § 363 (Dkt. # 69)

This contested matter came before the Court for evidentiary hearing on the *Motion to Sell Asset Free and Clear of Liens, Interest, Encumbrances and Claims Pursuant to 11 U.S.C. § 363* (the "Motion") (Dkt. # 69) filed by the chapter 7 trustee and joined by Nutrien Ag Solutions, Inc. (Dkt. # 289). The trustee seeks court approval to sell a 57-foot Miller Marine fishing vessel. The debtor initially opposed the Motion (Dkt. # 78), but his response was later

1

withdrawn (Dkt. ## 288, 290). An evidentiary hearing was held on October 15, by video, where the Court observed the witnesses, heard their testimony, and received exhibits into evidence. The debtor did not appear. The only opposition was from Billy Joe Swick, Jr., who contends he owns a 50% interest in the boat. The trustee contends that Mr. Swick owns no interest in the boat, and that the debtor is the sole owner.

The resolution of this case turns not on legal issues, but a credibility determination. The lion's share of testimony came from Mr. Swick. In short, the Court did not find Mr. Swick nor his documentation credible and finds that he has no ownership interest in the boat. At best, Mr. Swick failed to properly document his interest in a boat worth several hundred thousand dollars. At worst, Mr. Swick fabricated documents. Either way, Mr. Swick's objections fail and the trustee's Motion (Dkt. # 69) is due to be granted.

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334, and the *United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 6, 1984. This is a core proceeding as set forth in 28 U.S.C. § 157(b)(2)(A), (B), (E), (N), and (O).

## FINDINGS OF FACT & CONCLUSIONS OF LAW

Mr. Swick, who is 53 years old, has been involved with boats his entire life. He owns two companies that sell and repair boats. He testified that he also owns a 50% interest in two large boats–the boat at issue and a 37-foot Freeman. He testified that he understands the importance of boat titles. Mr. Swick formerly worked as a boat captain and employee of the debtor, although he no longer does so. Mr. Swick and the debtor remain close friends and continue to take offshore fishing trips together, including during the bankruptcy case.

In May 2015, Arthur Andrew Holk sold the boat to the debtor. No one disputes the sale to the debtor nor that the debtor paid $300,000.00 in consideration. In fact, Mr. Swick testified that at the time of the sale, the debtor became the 100% owner of the boat. Mr. Swick essentially acted as the debtor's agent in buying the boat. He testified that he found the boat, negotiated the price, and took delivery of the boat when the debtor became the owner. Mr. Swick was also involved in the sale documentation. Mr. Swick testified, and the Court finds, that the debtor was the owner of the boat at the end of May 2015. This is where the dispute begins.

Mr. Swick testified that a few weeks after the debtor's purchase of the boat, he and the debtor agreed they would each own a 50% interest in the boat. The debtor's consideration was the $300,000.00 he paid to become the owner,

3

while Mr. Swick was to provide $300,000.00 of labor and materials to refurbish the boat. Any labor and materials above $300,000.00 were to be agreed on and split evenly between Mr. Swick and the debtor. At times, Mr. Swick testified that he and the debtor each owned 50% of the boat in their individual capacities. At other times, he testified that they each owned 50% of a limited liability company called "Game On Offshore, LLC" (the "LLC") that owned the boat. At still other times, Mr. Swick testified that while he and the debtor formed the LLC, they never transferred ownership of the boat into it.

The Court finds none of this testimony, nor the documents Mr. Swick introduced in support of it, credible. Mr. Swick testified that the bill of sale from Mr. Holk to the debtor was not immediately recorded with the Coast Guard because he sent it to his "documentation lady." She noticed discrepancies in dates and sent it back to Mr. Swick. He did not record it. When the trustee attempted to submit the bill of sale to the Coast Guard, it was rejected because the signature notarization precedes the signature date by four days. Again, Mr. Swick was involved in the preparation of the bill of sale from Mr. Holk to the debtor.

Trustee's Ex. # 27, p. 3, purports to be the bill of sale from the debtor to the LLC. It is signed and dated March 22, 2016. Mr. Swick testified that the debtor was the 100% owner of the boat on that day and could make the transfer to the LLC. This flies in the face of Mr. Swick's prior testimony that he owned

4

50% of the boat months before that.  More importantly, Mr. Swick testified that he was involved in the creation and signing of the bill of sale and was unequivocal that it was signed on March 22, 2016.  When confronted by the trustee with the August 2016 release date of the Coast Guard form used for the bill of sale,[1] and therefore, the impossibility of the form having been signed in March when it had not been released by the Coast Guard to the public, Mr. Swick then admitted to back-dating the document.  The only other witness to testify was the trustee's expert, Mr. Thomas Plante, who testified that he confirmed with the Coast Guard that the form was not released to the public until August 2016, five months after the purported signature date.

Mr. Swick also attempted to show ownership of the boat by the LLC by pointing to an insurance declaration page admitted into evidence.[2]  The insurance declaration page purports to list the LLC as the insured.  That declaration page is dated August 25, 2015 (Swick ## 000020, 000021).  But the LLC's articles of organization reflect that the LLC was not formed until March 14, 2016 (Swick ## 000005-000007).  The LLC was clearly not the insured when it did not come into existence until seven months later.

Mr. Swick's credibility was further undermined by his testimony as to whether the debtor still owed him money.  Mr. Swick admitted that he had

---

[1] The bottom, left-hand corner of Trustee's Ex. # 27, p. 3, reads "CG-134D (8/16)."
[2] The trustee stipulated to the admission of all documents offered by Mr. Swick (Dkt. # 295), Bates No. 000001-000076.  References to these exhibits will be to "Swick 0000##."

5

made loans to the debtor totaling over six figures. He initially testified that the debtor had fully repaid him and that his claims regarding the boat were not an attempt to collect. When confronted with his own documents that show where he claims to have provided over $400,000.00 of labor and materials for the boat, and that the ownership agreement provides that anything over $300,000.00 would be split evenly (Trustee's ## 7, 8), Mr. Swick then admitted he is still owed more than $55,000.00 from the debtor. Further, the monthly invoices detailing Mr. Swick's work on the boat begin in June 2015 and continue through April 2019 (Swick ## 000049-000076). Mr. Swick testified that although he created the invoices monthly, he never sent any of them to the debtor until after the bankruptcy case was filed. The Court cannot accept that Mr. Swick provided in excess of $400,000.00 in labor and materials to satisfy (in fact, more than satisfy) his consideration obligations over a period of four years and yet never sent his partner a single one of the invoices.

In short, Mr. Swick's testimony and documents are replete with inconsistencies. His testimony changed repeatedly, often when confronted with proof of its falsity. The Court also notes that the debtor, who was involved in every aspect of these purported transactions, did not appear to bolster his close friend's testimony.[3] All parties agree that Mr. Holk sold the boat to the

---

[3] In the debtor's original Schedules, filed under penalty of perjury, the debtor failed to list an ownership interest in either a boat or an LLC (Dkt. # 11, p. 8). Eight months later, after the

debtor. The Court finds and concludes that the ownership chain stops there and the debtor was the owner of the boat when the bankruptcy case was filed.

The chapter 7 trustee is charged with liquidating all non-exempt assets of the debtor to pay the claims of creditors.[4] The debtor owns the boat, which is non-exempt property of the bankruptcy estate. The trustee's Motion (Dkt. # 69) is, therefore, well-taken and due to be granted. Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED** that the Motion (Dkt. # 69) is **GRANTED.** The trustee is directed to exercise his authority to take any and all actions to clear title in the debtor's name and thereafter sell the boat for the benefit of creditors on the terms and conditions set forth in the Motion (Dkt. # 69).

## END OF ORDER ##

---

trustee discovered the boat, the debtor amended his Schedules to reflect a 50% interest in the LLC (Dkt. # 184, p. 7).

[4] 11 U.S.C. § 704(a).