**SO ORDERED,**



Judge Jason D. Woodard

United States Bankruptcy Judge

The Order of the Court is set forth below. The case docket reflects the date entered.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| STEVEN KEITH JENKINS, | ) | Case No. 19-13234-JDW |
| | ) | |
| Debtor. | ) | Chapter 7 |

ORDER DENYING MOTION TO CONVERT CHAPTER 7 CASE TO
CHAPTER 12 (Dkt. # 353)

This matter came before the Court on the *Motion to Convert Chapter 7 Case to Chapter 12* (the "Motion") (Dkt. # 353) filed by the debtor. An evidentiary hearing was held on April 13 by video, where the Court heard the debtor's sworn testimony and admitted exhibits into evidence. The chapter 7 trustee, Nutrien Ag Solutions, Inc., Mississippi Land Bank, ACA, and JWBMS, LLC all opposed the Motion (Dkt. ## 368, 371, 372, 374, 375). Having heard

1

the testimony, analyzed the admitted exhibits, and reviewed the docket, the Court finds that the Motion is due to be denied.

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334, and the *United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 6, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## II. FINDINGS OF FACT[1]

The debtor filed this case on August 12, 2019 (Dkt. # 1). It now contains almost 400 docket entries. One entry is an opinion of the Court detailing how the debtor and his good friend, Bill Swick, evaded the chapter 7 trustee's attempts to locate and liquidate a 57-foot boat valued at $300,000.00 by back-dating documents and excluding information from the bankruptcy schedules.[2] The debtor testified that he was unaware the boat needed to be disclosed and further testified that Game On Offshore, LLC owned the boat when he filed bankruptcy. First, the Court has already found that the boat was not owned by the company, but rather by the debtor (Dkt. # 298, pp. 6–7). Second, even

---

[1] To the extent any of the findings of fact are considered conclusions of law, they are adopted as such, and vice versa.
[2] (Dkt. # 298, p. 3). That order is currently on appeal (Dkt. # 313).

2

if the company had owned the boat, the debtor allegedly owned a 50% interest in that company, which he also failed to disclose (Trustee's Ex. # 2, p. 8).

At the hearing on the Motion, the debtor testified that he read his schedules, knew they were prepared under oath, and signed them (Trustee's Ex. # 29, p. 6) (Trustee's Ex. # 1, p. 6). When the debtor filed his initial petition, he indicated he had less than $50,000.00 in liabilities (Trustee's Ex. # 1, p. 6). The debtor now admits his liabilities were closer to $8,000,000.00.

It is now clear that the debtor owes Mr. Swick money (Dkt. # 298, pp. 5–6). Not only did the debtor fail to list Mr. Swick as a creditor in his schedules, he failed to disclose payments to Mr. Swick before and during his bankruptcy. The trustee had multiple checks admitted into evidence issued from entities the debtor controlled or was involved in that were payable to Mr. Swick: a November 2018 check for $60,000.00 (Trustee's Ex. # 9, p. 3), another, signed by the debtor, for $7,500.00 dated September 12, 2019 (Trustee's Ex. # 11), another for $55,000.00 dated June 17, 2019 (Trustee's Ex. # 13), another, signed by the debtor, for $10,000.00 dated June 18, 2019 (Trustee's Ex. # 13), and another dated October 31, 2019 for $8,500.00 (Trustee's Ex. # 20). Notwithstanding those payments, the debtor did not list Mr. Swick as a creditor on his schedules or as a transferee on his Statement of Financial Affairs. In an attempt to explain away some of these checks, the debtor argues that he transferred the assets of his company, J&P Farms, to JH Farms, LLC

and Jan Hudson, his accountant and "documentation lady" (Dkt. # 298, p. 4, ¶ 2), and he did not have the authority to endorse checks from JH Farms' account. The trustee then introduced an Account Agreement (Trustee's Ex. # 18) and a Limited Liability Company Authorization Resolution (Trustee's Ex. # 19, p. 2) from Guaranty Bank showing that the debtor had the authority to "[e]ndorse checks and orders for the payment of money or otherwise withdraw or transfer funds on deposit. . ." for JH Farms. *Id.* In addition, a default judgment has been entered in an adversary proceeding setting aside the debtor's transfer of the assets of J&P Farms to Ms. Hudson as a fraudulent conveyance.[3] The trustee has filed an adversary proceeding to recover $125,000.00 of payments the debtor allegedly made, two months prior to filing, to Bill Swick and his company, Gulf Coast Yacht Werks.[4]

The debtor testified that his income from JH Farms was $5,000.00 per month,[5] but he personally endorsed a $14,000.00 check from JH Farms to a hunting club, of which he and Mr. Swick are members (Trustee's Ex. # 20, dated 10/22/2020). The trustee introduced a $5,000.00 check for "fuel repay" with the memo "K. Jenkins," a $812.94 check to Batesville Gun & Pawn with a memo of "Keith Jenkins," and a $691.67 check to Bilbo's Citgo with the memo

---

[3] *Fava v. Hudson,* A.P. Case No. 20-01066-JDW (A.P. Dkt. # 15).
[4] *Fava v. Swick, et al.,* A.P. Case No. 20-01070-JDW (Dkt. # 1, p. 2).
[5] The debtor's sworn Schedule I shows an "[e]stimated monthly draw" of $2,500.00 (Dkt. # 11, p. 30).

4

"Keith Jenkins" (*Id.*, dated 1/8/2021, 1/21/2021, and 1/13/2021). The debtor testified that Ms. Hudson pays his power and American Express bills. He testified those bills are sometimes paid with cash. In September 2020 alone, checks with the subject line "cash" totaled $13,500.00. *Id.* JH Farms is clearly paying the debtor more than the $5,000.00 per month he testified he is receiving.

The debtor did disclose his 100% ownership interest in yet another company known as SKJ, LLC. The problem is that he valued that interest at $0.00 (Trustee's Ex. # 2, p. 8). The trustee later discovered that the company had a cause of action that the debtor testified was worth $1,000,000.00. Once the cause of action was discovered by the trustee, it was settled for $125,000.00 (Dkt. # 351).

The debtor also failed to comply with an order of the Court. On January 28, 2021, an *Order Granting Motion to Compel Turnover* was entered (Dkt. # 359) (Trustee's Ex. # 10). That Order directed the debtor to "turnover all bank account statements for all entities he has an interest in as well as all personal bank accounts from July 2019 to the entry of this order." *Id.* The debtor did not comply. Rather than continue to chase the debtor for the documents, the trustee obtained the information by subpoena from the banks.

Finally, the debtor chose to file a chapter 7 liquidation case over 18 months ago. The filing of that petition put the trustee in charge of all property

of the estate. It has become clear that the debtor has continued to use assets of the bankruptcy estate to farm without trustee or Court approval. In addition to using these assets during the bankruptcy case, he had paid creditors of his choosing without regard to the priority waterfalls in the Bankruptcy Code and without Court approval.

## CONCLUSIONS OF LAW

11 U.S.C. § 706(a) and (d) provide:

> (a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.
> . . . .
> (d) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

Prior to 2007, there existed "a split of authority among the courts as to whether 11 U.S.C. § 706(a) grant[ed] a one-time absolute right to convert to a debtor who otherwise [met] the § 109(e) requirements."[6] The United States Supreme Court, in *Marrama v. Citizens Bank of Massachusetts*, resolved the split by holding:

> the broad authority granted to bankruptcy judges to take any action that is necessary or appropriate "to prevent an abuse of process" described in § 105(a) of the Code, is surely adequate to authorize an immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the

---

[6] *In re Widdicombe*, 269 B.R. 803, 805 (Bankr. W.D. Ark. 2001) (emphasis omitted).

6

allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors.[7] Put simply, "[t]he text of § 706(d)... provides adequate authority for the denial of [a] motion to convert" when a debtor engages in bad faith conduct.[8]

The Fifth Circuit Court of Appeals applied *Marrama* in *In re Jacobsen*.[9] There, the debtor "had interests in assets that were not disclosed on his schedules and... had made transfers that were not disclosed in his Statement of Financial Affairs."[10] The Fifth Circuit noted that such conduct places a debtor "clearly among the class of atypical debtors" that attempt to "conceal [assets] by filing 'misleading or inaccurate' schedules."[11] The Fifth Circuit refused to afford "an abusive debtor [the] escape hatch" of conversion when they "had acted in bad faith or abused the bankruptcy process...."[12]

This Court previously applied *Marrama's* directives in *In re Tillman*, where it held that "Section 706(a) does not provide an absolute right of conversion if a debtor has engaged in bad faith."[13] The Court further noted a debtor's strict obligation that his "schedules... be as complete and accurate as possible."[14] Inaccuracies in a debtor's schedules may be a badge of bad faith

---

[7] 549 U.S. 365, 375 (2007).
[8] *Id.* at 374.
[9] 609 F.3d 647 (5th Cir. 2010).
[10] *Id.* at 662.
[11] *Id.* (citing *Marrama*, 549 U.S. at 371).
[12] *Id.* at 660.
[13] 2019 WL 6127483, at 2 (Bankr. N.D. Miss. Nov. 18, 2019).
[14] *Id.* at 1 (citing *In re Park*, 246 B.R. 837, 842 (Bankr. E.D. Tex. 2000) (citing *In re Faden*, 96 F.3d 792 (5th Cir.1996)).

and is a factor the Court must consider when "evaluat[ing] the totality of the circumstances to ensure the [debtor is] acting in good faith."[15]

This debtor's entire case has been replete with delay, obfuscation, and defiance. He has failed to disclose several valuable assets. He has failed to disclose payments and property transfers both before and after the bankruptcy case was filed. He has filed amendments to his schedules only when caught. He has failed to comply with orders of the Court and Bankruptcy Code mandates. He continues to make post-petition payments to Mr. Swick for repayment of undisclosed loans. He continues to use estate assets after filing a liquidation case and has paid the proceeds (bankruptcy estate property) to creditors without Court or trustee approval. The debtor has consistently been untruthful with the Court and the trustee, has ignored dictates of the Bankruptcy Code, and has acted in bad faith at every turn. Permitting this debtor to convert to chapter 12, without trustee control, would be putting the fox in charge of the henhouse. Had the debtor been in control of the estate assets, he would not have disclosed the boat, the SKJ cause of action, or the payments to Mr. Swick. There would have been no one to discover them, much less to recover the funds for the benefit of the debtor's creditors. The debtor's bad faith is reason to deny the Motion under *Marrama.*

---

[15] *Id.* at 2 (citing *In re Hurtado*, No. 17-10074, 2017 WL 5153567, at *7 (Bankr. S.D. Tex. Nov. 6, 2017) (citing *Marrama*, 549 U.S. at 372 – 374)).

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED** that the Motion (Dkt. # 353) is **DENIED.**

## END OF OPINION ##